UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DES PRESTON and the ESTATE OF
HELEN PRESTON,

        Plaintiffs,                           Case Number  17-13990
                                                         Honorable David M. Lawson

v.

UNITED STATES DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE, PATTY HALL,
COUNTY OF WASHTENAW, WASHTENAW COUNTY
TREASURER, BRANDON FAHLMAN, WHITNEY
FAHLMAN, ALBERT FAHLMAN, GAIL FAHLMAN,
MICAH SWAN, and ELIZABETH SWAN,

        Defendants.
_____/

**OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS,
VACATING PRELIMINARY INJUNCTION,
AND DISMISSING CASE WITH PREJUDICE**

When plaintiff Des Preston's mother, Helen, departed this world, she left her son at least two material things: a house on Apple Way in Ann Arbor, Michigan, and a hefty bill for unpaid property and income taxes.  Washtenaw County's tax collection efforts ultimately led to a foreclosure proceeding on the house, which Des Preston largely ignored until it was too late.  The Internal Revenue Service (IRS) bid in the amount of the unpaid property taxes at the foreclosure sale, which was well below the market value of the house.  When Preston failed to exercise his right of redemption, the IRS then sold the house at auction to a group of six real estate speculators for considerably more money, but still well below the house's market value, according to Preston.

Although the taxing authorities gave Preston proper notice, he contends that due to his mental infirmities, he was entitled to some form of enhanced notification.  He has filed a lawsuit to unwind the sales, presumably based on his rights under the Due Process Clause.  The Court issued

a temporary injunction that forestalled a deed conveyance by the IRS to the auction purchasers, so that the legal issues could be sorted out. The government has filed a motion to reconsider the injunction and a motion to dismiss the complaint. Preston's circumstances are unfortunate, and his story reveals several inequities. But all the actors behaved within the bounds of the law, and Preston has not stated a cognizable claim for relief. Therefore, the Court will vacate the preliminary injunction, grant the motion to dismiss, and dismiss the case.

I.

The facts assembled below come from the amended complaint and the public records of the proceedings leading to the tax foreclosure of the Preston family home. The parties have not registered any dispute about them.

The Washtenaw County, Michigan Treasurer filed a petition on December 2, 2015 for foreclosure of the Preston home on Apple Way in Ann Arbor, Michigan to recover unpaid property taxes on the residence in the amount of approximately $20,000. The home formerly was owned by Helen K. Preston, plaintiff Des Preston's mother. Helen died on June 20, 2012, leaving a number of unpaid tax liabilities including the outstanding property taxes and unpaid federal income taxes, which to date have not been paid by her estate, her son, or anyone else. Before the foreclosure and Helen Preston's death, the IRS had recorded notices of federal tax liens against the home in February and March 2012 for assessments relating to tax years 2001, 2002, 2004, 2005, 2007, and 2010, amounting to just under $46,000.

On August 5, 2016, a representative of the County visited the home, had personal contact with the occupant of the property, and served on the occupant a copy of a notice of a hearing in the state circuit court on the County's petition for foreclosure, indicating that the hearing would be held

on February 22, 2017. According to the notice affidavit, the County representative also "orally informed the occupant that this property will be foreclosed and the occupants will be required to vacate unless delinquent taxes, interest, penalties, and fees are paid to the county Treasurer before the foreclosure date." The notice of the hearing on the petition for foreclosure also was served by certified mail, addressed to the Estate of Helen Preston, c/o Des Preston, and a signed return receipt executed by Des Preston indicates that the mailing was received by him on November 2, 2016.

On February 22, 2017, presumably following the hearing on the foreclosure petition, the Washtenaw County, Michigan circuit court entered a judgment of foreclosure vesting absolute title to the home in the County effective as of March 31, 2017, following the expiration of the redemption period allowed by Michigan Compiled Laws § 211.78k. The record does not indicate, and the complaint and amended complaint do not allege, that the plaintiff ever presented to the state court any written objection to the foreclosure, or that he appeared at the hearing on February 22, 2017 to raise in person any contest or dispute about the foreclosure.

After the government's revenue agent noted the entry of the judgment of foreclosure in the public record, the IRS exercised its right of redemption as a lien holder on the property and bought it from the County on a bid for the full amount of the approximately $20,000 in back property taxes. On December 12, 2017, the IRS sold the property to six individuals (who recently were named as defendants in this case), who were the high bidders with a purchase bid of $265,000 at an auction sale. The buyers subsequently tendered to the government the full amount of their bid, and the government's agent attested that the only task remaining to be done to complete the sale is delivery of the deed.

According to the amended complaint, plaintiff Des Preston is an adult male, age 59, who resides in the home on Apple Way, which was owned by his deceased mother. Preston inherited the house upon her death, although the amended complaint suggests that "title has not been perfected," by which it appears to mean that no recorded transfer of the property via the estate to the plaintiff ever was accomplished. Preston alleges that he suffers from "debilitating depression" and "post-traumatic stress disorder" (PTSD). He contends that he was diagnosed with PTSD by a mental health professional before the foreclosure occurred. Preston asserts that he "has a high I.Q." and "attended the University of Michigan as a student," but that, due to his mental condition he is "employed as a dishwasher at a friend's restaurant."

Preston has presented a number of affidavits in opposition to the government's motion to dismiss. Although they have no legal bearing on the issues presented in the motion to dismiss, which challenges the adequacy of his pleadings, the Court will discuss them here because they serve to round out the facts of his story, and presumably could be alleged in another complaint amendment if they were consequential.

Preston's attorney (Jonathan Rose) and his employer (Martin Contreras) aver that they knew Preston through the course of working with him more than 30 years ago to "resist University of Michigan [administrators' efforts] to censor students." Rose attests that he encountered Preston again in December 2017, after Mr. Contreras contacted him and suggested that Preston needed legal help to contest the foreclosure of the family home. Rose says that "Mr. Contreras made the referral in October but Mr. Preston made himself available for contact [two] days before the sale, and then slept all the next morning, so I was unable to have court papers on the judge's desk until the time of the sale." Rose attributes Preston's lack of attention to the case to "his severe depression." Rose

also says that he has observed "Mr. Preston to be depressed and the depression to be severe and obvious." Based on his observations, Rose says that Preston is "slow acting, distracted, has [a] dour mood, is reported by his employer to be slow at work, unsmiling, [and] not [to have a] fun demeanor." Rose concludes that Preston "ignores his rights until an easy matter becomes an emergency and too late to deal with."

In his own affidavit, the plaintiff asserts that he is "competent to testify" as to all of the facts stated. He explains that he has a friend ready to offer more than $100,000 to retire the unpaid tax debts on the property, and that "[i]n October 2017 [he] tendered to [Revenue Agent Patricia Hall] payment of $92,000, or whatever larger amount [was] owed," but "Ms. Hall declined [his] tender, saying that an auction was set on [his] house; also that [he] had to leave." Preston states that Ms. Hall "did not offer an eviction case [sic] or other process to get [him] to leave or to present defenses," and that "[t]he said auction was not held for two months."

Preston asserts that he has "suffered severe depression for at least several years," that he has "a down mood, and depressed activity," and that he "do[es] not work well nor stay fully awake well." Preston asserts that his "menial job [as a dishwasher] is the best [he] can do given the depression." He also asserts that his "depression is not subtle" and "is very apparent to those around [him]." He states that he was "unable, due to depression, to contact [his] own attorney" for "well over a month," until the date his affidavit was prepared, and that he made contact with attorney Rose only after Mr. Contreras "[l]ed [him] personally with phone in hand, to a place to talk with Mr. Rose, and [they] were able to have a conversation." Preston also states that he "attended [the] University of Michigan and did half the work for an undergrad degree, before the depression set in." He explains that he "[has] the skill to work at [the] Institute for Social Research interviewing in

Spanish or English and translating between the two," and that he is "able to do this work, but unable to arrange it, due to the depression," so he instead holds "a menial dishwashing job."

The plaintiff filed his original complaint in this Court on December 12, 2017, followed about two weeks later by a motion for a preliminary injunction. The Court granted the motion for preliminary injunction that same day, and subsequently held a hearing attended by counsel for the plaintiff and the government. After that hearing, the Court continued the preliminary injunction and directed the plaintiff to file an amended complaint to add Washtenaw County and the prospective purchasers of the home as defendants, due to their apparent status as interested or indispensable parties to the litigation. On January 12, 2018, the government filed a motion for reconsideration of the order granting early injunctive relief. On January 17, 2018, the plaintiff filed his amended complaint, to which the government responded with its motion to dismiss.

The amended complaint is vague as to the precise cause of action alleged. It appears from the pleadings and the plaintiff's opposition brief that the gravamen of his complaint is that his due process rights were violated because the County did not afford him the "heightened notice of foreclosure," which he believes was required by the Supreme Court's decision in *Covey v. Town of Somers*, 351 U.S. 141 (1956) (holding that notice of a foreclosure sale provided by postal mail and publication to a person who was known by town officials to be legally incompetent did not satisfy the Due Process Clause). The pleadings and briefing do not articulate any other discernible basis for any cause of action against either the government or any of the other defendants.

The County and the individual defendant bidders on the home evidently have not yet been served with process and have not appeared in the case, but a summons in their names was requested by the plaintiff on April 5, 2018 and issued by the Clerk the next day.

II.

The government has raised several grounds in its motion to dismiss, but its core position is straightforward: it contends that Preston simply has not stated any legal basis for upsetting the serial tax sales that resulted in the transfer of legal title to the property, first to the IRS and then to its bidders. It says that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Preston has filed a brief in opposition to the motion, and because the motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motions, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

### A. Procedural Rule

The purpose of the motion under Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them,

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### B.  Property Tax Foreclosure

Preston's immediate prayer for relief is to invalidate the sale by the IRS to the six speculators who bid for the property at the auction. He says that allowing the sale to proceed would result in an unfair windfall to the prospective purchasers and loss to the plaintiff, where the purchasers bid only $265,000 on a house which the plaintiff contends is worth more than $500,000 fair market value, to retire total tax debts of no more than $100,000, which the plaintiff stands by ready and willing to pay.

The plaintiff, however, lost title to the property through a tax foreclosure conducted not by the IRS, but by Washtenaw County. Michigan provides a statutory framework for counties to recover unpaid property taxes by foreclosure under Michigan Compiled Laws §§ 211.78 *et seq.* "Not later than June 15 in each tax year, the [county seeking foreclosure must] file a single petition with the clerk of the circuit court of that county listing all property forfeited and not redeemed to the county treasurer under [section 211.78g] to be foreclosed under [section 211.78k] for the total of the

forfeited unpaid delinquent taxes, interest, penalties, and fees." Mich. Comp. Laws § 211.78h(1). "The petition shall seek a judgment in favor of the [county] for the forfeited unpaid delinquent taxes, interest, penalties, and fees listed against each parcel of property," and "shall request that a judgment be entered vesting absolute title to each parcel of property in the foreclosing governmental unit, without right of redemption." *Ibid.*

If a petition is filed under this statute, the county must serve the property owner with notice of the foreclosure and file a proof of service. Service must include a personal visit to the property and publication in an approved newspaper. Mich. Comp. Laws § 211.78k(1). Anyone who claims an interest in the property and who wants to contest the foreclosure must "file written objections with the clerk of the circuit court and serve those objections on the [county] before the date of the hearing required under this section." Mich. Comp. Laws § 211.78k(3).

If the court determines that the interested person is "incompetent, is without means of support, or is undergoing a substantial financial hardship," it may delay the foreclosure for up to a year, or may extend the redemption period. Mich. Comp. Laws § 211.78k(4). Otherwise, the court may enter a "final judgment" of foreclosure "at any time after the hearing . . . but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases." Mich. Comp. Laws § 211.78k(5). The right to redeem the property thereafter expires "on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section." *Ibid.* If payment of the outstanding taxes, interest, and costs is not

made by then, fee simple title to the property "shall vest absolutely in the [county], and the [county] shall have absolute title to the property" Mich. Comp. Laws § 211.78k(6).

There is no suggestion in the record that Washtenaw County failed to follow these procedures when it foreclosed on the Preston home on Apple Way for the delinquent property taxes. And Preston does not argue that he redeemed the property within the time allowed under Michigan law. Nor has Preston pointed to any alleged impropriety in the ensuing proceedings by which the government redeemed its right and acquired the property, and subsequently sold the home to satisfy its federal tax liens.

### C. Due Process

Of course, Preston may not be deprived of his property by the government "'without due process of law.'" *Puckett v. Lexington-Fayette Urban County Gov't*, 833 F.3d 590, 604 (6th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1). But to establish a procedural due process violation, he must show that he (1) had a life, liberty, or property interest protected by the Constitution; (2) was deprived of that interest by a state actor; and (3) was not afforded timely and adequate process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). The notice and hearing opportunity must be "appropriate to the nature of the case." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (quotations and citations omitted). The Sixth Circuit has explained that "the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Preston seems to contend in his amended complaint that he was entitled to something more in the way of notice than the Michigan foreclosure statutes demand. However, he has not alleged any facts in his amended complaint sufficient to sustain such a claim. Moreover, based on the information in the public record, and the facts he has supplied in the several affidavits submitted with his motion papers, it is apparent that there is no set of facts that he could allege in any hypothetical amended pleading that could make out any plausible claim that he was denied any extra or other notice of the foreclosure proceedings due to him as a result of purported lack of capacity to attend to his affairs. In fact, his attestations affirmatively show that he was throughout all of the proceedings fully able to understand the nature and perils of the foreclosure process, and fully capable of attending to affairs of such consequence.

As an initial matter, it is undisputed that Preston received notice by at least two and possibly three different means between three and six months before the hearing on the petition for foreclosure. There appears to be no dispute that the County followed the statutory procedure for publication and delivery of notice of the foreclosure petition and hearing, and Preston does not deny that he signed for a certified mail delivery of the notice on November 2, 2016, more than three months before the hearing. He has not admitted that he was the "occupant" to whom additional in-person oral notice was given and to whom another written notice personally was delivered on August 5, 2016. But from the facts alleged in the complaint and those undisputed facts evident from the public record, it is beyond question that Preston did receive actual notice of the foreclosure. He does not anywhere allege that he did not understand the import of the notice that actually was delivered or that he did not know what he would have to do in order to contest the foreclosure.

"The Supreme Court has frequently said . . . that, under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988) (collecting cases). Here, the multiple forms of notice given well before the show cause hearing and entry of judgment amply satisfied the due process requirement of providing Preston with an opportunity to be heard in a meaningful way, at a meaningful time. And he has not pointed to any authority to call into question the conclusion of the Michigan Supreme Court that where no due process violation is evident, a court is without power to vacate or set aside a judgment of foreclosure vesting absolute title in the County after the expiration of the statutory redemption period. *See In re Petition of Tuscola County Treasurer for Foreclosure*, 317 Mich. App. 688, 700, 895 N.W.2d 569, 575 (2016) ("[B]ecause there was no due-process violation, the circuit court did not have jurisdiction to modify the judgment of foreclosure pursuant to the due-process exception from Wayne County Treasurer.").

More that a month went by following the hearing before the judgment vesting title in the County became effective. Preston did nothing to challenge it. This Court certainly must afford at least the same finality to the judgment of foreclosure that would be afforded it by a state court acting on the same facts. *In re Knapper*, 407 F.3d 573, 585 (3d Cir. 2005) ("Having failed to challenge the foreclosure judgments either before or after they became final in state court, Knapper is seeking, in effect, a federal judgment to overturn a valid state court judgment. However, given the sanctity accorded valid state court judgments by federal-state comity and the Full Faith and Credit statute, Knapper's appeal should be dismissed.") (Rosenn, J., concurring). As the Michigan Court of Appeals has explained, "[t]he goal of MCL 211.78k(6) is to provide finality, and setting aside the judgment of foreclosure months after the judgment was entered because the respondent obtained the

necessary funds is contrary to the reasoning underlying the statute." *Tuscola County*, 317 Mich. App. at 700, 895 N.W.2d at 575.

Preston's citation of the Supreme Court's decision in *Covey v. Town of Somers*, 351 U.S. 141 (1956), does not help him. That case does not require the state to extend the window for action after notice of a foreclosure where a person has a condition affecting his mental capacity. Rather, the Court there simply held that notice given to a person known to municipal officials to be legally incompetent is ineffective to satisfy the Due Process Clause, regardless of when or by what means given, because the person in question cannot reasonably be expected to understand the nature or consequences of any notice, however or whenever delivered. In *Covey*, the Supreme Court, looking to the uncontradicted affidavit of counsel for the property owner, assumed that "the taxpayer . . . was *wholly unable to understand the nature of the proceedings against her property* (from which it must be inferred that she was unable to avail herself of the statutory procedure for redemption or answer)." Based on that premise, the Court held that where "the town authorities *knew her to be an unprotected incompetent*," then "compliance with the statute would not afford notice to the incompetent and . . . a taking under such circumstances would be without due process of law." 351 U.S. at 147 (emphasis added).

For Preston to make out a due process claim under the rule established by *Covey*, he must allege some facts to show both that he was "incompetent" — meaning that he was unable to understand the nature of the foreclosure proceedings — and he was unable to act to protect his rights. But here Preston has not put forth any facts that plausibly support a conclusion that he was wholly mentally unable to understand or act on his rights. Generally a finding of mental incapacity sufficient to support equitable relief by tolling a legal bar to action, such as a statute of limitations,

must be based on a finding that the affected person is or was "unable to manage [his] business affairs or estate, or to comprehend [his] legal rights or liabilities," "unable to engage in rational thought and deliberate decision making sufficient to pursue [his] claim alone or through counsel," "physically and mentally incapacitated," "adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise let someone else handle [his] affairs," or that he was "in fact prevented from managing [his] affairs." *Smith-Haynie v. D.C.*, 155 F.3d 575, 580 (D.C. Cir. 1998) (collecting cases; citations, quotations, and alterations omitted) (discussing the showing required to demonstrate that a plaintiff is "*non compos mentis*" within the meaning of D.C. statute that would permit tolling of the 90-day limitation period for filing suit under Title VII).

Preston here has alleged nothing more than that he is "severely depressed" and suffers from PTSD. He says that those conditions prevent or delay his action in attending to important matters. But evidence that an individual merely "was preoccupied, depressed, and obsessed with [other matters]" will not suffice to support a finding of legal incompetence. *Smith-Haynie*, 155 F.3d at 580. And the cases on point hold that evidence that the party took action to preserve his rights after the deadline for acting had passed, with no accompanying explanation as to how his capacity to act was restored, will negate any inference of his prior incapacity. *Ibid.*; *see also Wade v. Merit Systems Protection Board*, 468 F. App'x 980, 982 (Fed. Cir. 2012) ("[S]ubstantial evidence supports the [finding by the Merit Systems Protection Board] that Mr. Wade's ability to participate in other litigation fatally undermines his claim that his alleged incompetence prevented him from filing his appeal or a request for an extension.") (holding that plaintiff's diagnosed PTSD did not excuse his failure to file administrative appeal within the time allowed); *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988) ("In some special circumstances, mailed notice may be inadequate. For

example, where . . . the recipient is known to be someone who could not understand mailed notice, then due process may require more than sending a letter to the address on file. No such special circumstances exist in the present case. The address to which New York City sent the notices was Weigner's home address, which she herself provided in her in rem card. Nor is there any suggestion that Weigner was unable to appreciate the significance of the letters that the City sent."); *Rivera v. Shulkin*, No. 14-3031, 2017 WL 2608359, at *4 (Vet. App. June 16, 2017) ("[A]ny due process right of special notice would have to be based on [the government's] awareness that Ms. Rivera was a known incompetent. Nothing in the record establishes that Ms. Rivera has ever been adjudicated legally incompetent. Rather, every VA examination in the record stated that she was competent to manage funds. Therefore, Ms. Rivera has failed to establish any due process violation." (citations omitted)).

Moreover, the lucidity of Preston's own affidavit negates any prospect that he could allege more facts sufficient to sustain a claim that he was denied effective notice due to any purported incompetence. He asserts that he is highly intelligent, that he attended college and completed about half the work to receive a degree, that he is capable of skilled work as an interviewer and translator, and that he maintains regular employment (which he asserts is "menial" and beneath his full capacity, due to the weight of his depression). He also asserted that in October 2017 he tendered the full amount of the back taxes due to the government's revenue agent, in an attempt to persuade the government to halt its auction of the property. Those representations show that Preston well understood the consequences of the foreclosure and tax sale, and what actions he could take to avoid those consequences; and he has not anywhere alluded to any facts to suggest that he had any *more* capacity to understand the situation or pursue his rights in October 2017 than he did in August or

November of 2016. At any rate, he certainly has not pointed to any facts thay might show that he was legally incompetent or known by County authorities to be in such a state when notice of the foreclosure was given.

The government has raised challenges to Preston's amended complaint based on sovereign immunity, the statutory bar to injunctive relief enjoining collection of a tax, and the propriety of naming Ms. Hall as a defendant individually. But Preston's amended complaint fails to set forth any plausible claim for relief, so the Court need not address those arguments.

III.

Plaintiff Des Preston no doubt was laboring under profound mental challenges when he ignored the many notices that the house on Apple Way was in peril of foreclosure for unpaid taxes. But there is nothing before the Court to suggest that he was unable to understand the danger of losing the property that faced him or was incompetent to do something about it within the time the law allowed. And certainly the state and government actors gave him all the notice and opportunity to be heard that the law requires. The Due Process Clause demands nothing more. Preston's loss is unfortunate, but he has not stated a cause of action that the law will recognize. Therefore, there is no basis to undo the tax sale by Washtenaw County, and no grounds exist to continue the injunction preventing the IRS from completing its sale of the property to the auction bidders.

Accordingly, it is **ORDERED** that the preliminary injunction is **VACATED**.

It is further **ORDERED** that the government's motion to dismiss [dkt. #21] is **GRANTED**.

It is further **ORDERED** that the government's motion for reconsideration [dkt. #14] and the motion to withdraw by attorney Jonathan Rose [dkt. #25] are **DISMISSED AS MOOT**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

                                                 s/David M. Lawson  
                                                 DAVID M. LAWSON  
                                                 United States District Judge

Dated: May 14, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 14, 2018.

                                       s/Susan Pinkowski  
                                       SUSAN PINKOWSKI